## MATTER OF M/V "ZARATHUSTRA"

### In Fine Proceedings

#### BAL-10/1.207

*Decided by Board July 6, 1965*

Liability to fine does not lie under section 254(a)(3); Immigration and Nationality Act, as to an alien crewman inspected and refused conditional landing privileges who escaped from the hospital, an installation under the supervision of the United States Government, to which he had been removed by the agents for medical attention pursuant to Service permission, since the ability to control the crewman passed from the agents during his hospitalization and his escape from the hospital prevented his custody from reverting to the agents. Fine does not lie notwithstanding removal was at the request of the agents and with the understanding there would be no release from liability on the part of the carrier should the crewman abscond.

IN RE: M/V "ZARATHUSTRA," which arrived at the port of Baltimore, Maryland, from foreign on August 8, 1964. Alien crewman involved: PANAGIOTIS HAGIESFSTRATIU

BASIS FOR FINE: Act of 1952—Section 254(a)(3) [8 U.S.C. 1284]

On March 24, 1965, the District Director at Baltimore directed that an administrative penalty of $800, $1,000 mitigated to the extent of $200, be imposed on the Terminal Shipping Company, as agents for the vessel, "for failure to detain and deport an alien (above-named) ordered detained on board." He then certified his decision to this Board for review, pursuant to our order of March 16, 1965, wherein we had remanded the case to said official to supply certain procedural deficiencies.

This proceeding is concerned with an alien crewman of Greek nationality who was examined aboard the ship by an immigration officer at the time of its above-described arrival and refused conditional landing privileges. He later complained of illness and was examined aboard the ship by the carrier's physician. Thereafter, the agents requested Service permission to take the crewman, under guard, to the United States Marine Hospital in Baltimore for further evaluation of possible acute appendicitis. They also re-

quested parole procedure should the crewman be admitted to that institution as an in-patient, with the understanding that should the crewman abscond to the United States there would be no relief from liability to fine on the carrier's part.

On August 10, 1964, the crewman was hospitalized and paroled by the Service until September 10, 1964. Subsequently, the agents informed the Service that the crewman was fit for travel but not fit for duty, and requested permission to repatriate the crewman under safeguards satisfactory to the Service. The requested permission was granted, with the express understanding that such action would not release the agents from liability to fine should the subject alien abscond in the United States.

When the agents' represntative called at the United States Public Health Service Hospital in Baltimore to take the alien into custody on August 14, 1964, the date set for his discharge therefrom, it was learned that he had absconded from that institution the preceding night. Insofar as the record shows, he is still at large in the United States.

The fundamental fact here is that the district director has imposed this fine because an alien crewman who had been refused conditional landing privileges escaped from an installation under the supervision of the United States Government to which he had been removed by the agents pursuant to an immigration officer's order (Form I-259), albeit at the agents' request. Under such circumstances, we do not think the fine should or can be sustained. We so hold.

Practically speaking, the duty to detain and/or deport depends upon ability to control. Acknowledgement of this reality is found within the framework of the Immigration and Nationality Act itself, since section 233(a) thereof specifically relieves carriers and their agents of responsibility for the safekeeping of aliens removed from a vessel or aircraft for examination under an immigration officer's order. The proviso to that section does not operate against these agents because they obviously could not assume responsibility for the safekeeping of the alien in the United States Marine Hospital, a government installation operated and controlled by public officials. In other words, the ability to control this alien passed from the agents to the United States Government during the crewman's hospitalization. His escape from the United States Marine Hospital prevented his custody from reverting to the agents. As a result, his deportation by the agents became impossible of performance by reason of circumstances over which they had no restraining

power. Hence, to permit this fine to stand would lead to an absurd, unjust, or unreasonable result (see *Matter of SS "Annik,"* 1 I. & N. Dec. 418). No statute should be so construed, particularly not this quasi-penal one which requires strict construction in all respects, even to the extent of favoring the carrier and its agents (*United States v. J. H. Winchester and Co.,* 40 F.2d 472). Viewed in the light of these controlling considerations, the agents'. "agreement" that the crewman's escape would not act as a release of liability to fine is of no legal consequence whatsoever.

Support for our decision in this matter, if such be necessary, can be found in the regulations promulgated by the Service itself. Thus, in 8 CFR 253.1(a) it is provided that "afflicted crewmen" shall be paroled to a medical institution in the custody of the agents except: "during the period of time he is in such medical institution." While that specific exception is not contained in the regulation applicable to this particular crewman's situation (8 CFR 253.1(d)), the explanation is that *expressio eorum quae tacite insunt nihil operatur.*

Finally, for comparative purposes we will refer briefly to prior decisions of this Board involving somewhat similar problems. While the two cases to be cited are not controlling here because of factual or technical differences, consideration thereof will serve to put this case in its proper perspective.

*Matter of M/S "Panaghia Theoskepasti"* (NYC-10/52.489, BIA, 8/23/63; Int. Dec. No. 1300), was based on Notice of Intention to Fine charging "failure to detain on board the vessel at all times an alien crewman who had not been granted a conditional permit to land temporarily in the United States." The crewman therein had been refused conditional landing privileges, but the agents were later given permission to take him ashore for medical treatment (private), on condition that he be kept under guard at all times and returned aboard the ship. The ship's second officer was assigned the task of accompanying the crewman to the doctor and bringing him back to the ship, but the crewman eluded his guard en route to the doctor's office. We did not permit the fine to stand in that case because proceedings were predicated upon subsection (2) of section 254(a) of the Immigration and Nationality Act, rather than subsection (3) thereof as is the case here.

In the foregoing case, we referred to the unreported case of the *SS "Atlantic Unity"* (PHI-10/99.161, BIA, 7/9/59) wherein, as here, there was a violation of section 254(a)(3) of the Act charged. Therein, the boarding immigration officer refused conditional land-

ing privileges to an alien crewman, but the Service later consented to his removal from the ship for hospitalization. Such consent was given upon the responsible parties agreeing in writing, somewhat similarly to here, to the following conditions: that upon release from the hospital the crewman would be promptly removed from the United States without expense to the government; that he would be under guard after his release from the hospital until his deportation; and that the foregoing arrangement would not relieve the responsible parties from liability to fine proceedings and deportation costs if the crewman failed to so depart from the United States. We think that the conditions imposed there correctly reflect the true conditions under which a detained alien crewman's removal from the ship for hospitalization should be based. They obviously take into consideration the practicalities of hospitalization in a facility over which the agents have no control. And while we did sustain the fine in that case, the record there clearly reflected that the agents had regained custody of the crewman after his discharge from the hospital.

**ORDER:** It is ordered that the appeal be sustained and that the fine be not imposed.